[No. 14326-3-I.   Division One.   January 13, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. SHAWN RAYMOND MCINTOSH, *Defendant,* MICHAEL KEITH O'NEAL, *Appellant.*

*Eric Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Reba Weiss, Deputy,* for respondent.

CORBETT, C.J.—Michael Keith O'Neal appeals his judgment and sentence for second degree burglary and first degree possession of stolen property. He assigns error to the court's denial of his motion to suppress evidence. We affirm.

At approximately 4 a.m. on October 17, 1983, the automobile in which O'Neal was a passenger was stopped in the

city of Woodinville by King County Police Officer Susan Sherwood because the rear license plate lamp was out. Another King County Police Officer, Roger Bleiler, pulled up to assist. The driver of the vehicle, Shawn McIntosh, was unable to produce a driver's license or any other identification. O'Neal provided the registration for the vehicle which was in his wife's name, but he too had no identification. The officers noticed that both men's shoes and pant legs were wet, grassy, and dirty. O'Neal said that they became dirty in the yard of an apartment complex where they had been at a party. Sherwood, who was familiar with the area, found this explanation illogical. Bleiler saw that McIntosh wore a knife in a pocket sheath on his right hip. Sherwood then asked McIntosh to step out of the vehicle.

While Sherwood was searching McIntosh at the rear of her patrol car, Bleiler talked to O'Neal, during which time he observed "a pipe–looking object" protruding from under the front seat. It appeared to Bleiler to be some type of weapon. Concerned, Bleiler asked O'Neal to step out of the car and then checked under the seat to determine the nature of the pipe–like object. Before he could reach it, his hand touched several other objects under the seat. He found two pairs of gloves, a radio device, and a dent puller. Upon reaching the pipe, he found that it was indeed a piece of pipe and not a weapon. Bleiler became suspicious that O'Neal and McIntosh had been involved in criminal activity because he recognized the items found under the seat as having various uses in a burglary, e.g., breaking locks and forcing entry. At Sherwood's request, he then patted down O'Neal, finding a knife in a sheath on his hip, a small Crescent wrench, and a penlight. Given the late hour, the high incidence of burglary in the area, the lack of identification, the possession of knives by both occupants of the car, and Bleiler's knowledge of tools used in burglaries, he arrested O'Neal for possession of burglary tools.

Sherwood had Bleiler read McIntosh his rights while she completed the search of his person. She found 40 pieces of jewelry in his pants pocket. Sherwood radioed for backup.

When the other officers arrived, they looked at some of the jewelry and noticed that each piece was imprinted with "F.O.E.," the symbol for the Fraternal Order of Eagles. Officers went to check two Eagles clubs in the area, and it was discovered that the Redmond Eagles club had been burglarized. A warrant was obtained for the search of the car which produced two safes from the Eagles club together with what appeared to be burglary tools.

■■ O'Neal contends that the initial search and seizure was unconstitutional because there was no articulable suspicion that he was involved in criminal activity or that he was armed and dangerous. However, it is well established that an officer is constitutionally permitted to briefly detain a person who the officer reasonably suspects has or is engaged in criminal activity and to frisk that person for weapons if the officer has reasonable grounds to believe the person is armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 30, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Smith,* 102 Wn.2d 449, 452, 688 P.2d 146 (1984). Further, a *Terry* stop and frisk may extend into the car if there is reasonable suspicion that the suspect is dangerous and may gain access to a weapon in the vehicle. *State v. Williams,* 102 Wn.2d 733, 738–39, 689 P.2d 1065 (1984) (discussing *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, 3480 (1983)).

O'Neal claims that even if the initial stop of the vehicle was justified for the commission of a traffic offense, his subsequent patdown and arrest were not. He relies upon *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). In *Larson,* the car was initially stopped for a parking violation.

> [A] stop based on a parking violation *committed by the driver* does not reasonably provide an officer with grounds to require identification of individuals in the car other than the driver, unless other circumstances give the police independent cause to question passengers. To hold otherwise would restrict the Fourth Amendment rights of passengers beyond the perimeters of existing case law.

*Larson,* at 642. Here there were other circumstances to give Bleiler independent cause to question O'Neal. McIntosh, the driver, had no identification or driver's license. O'Neal stated that the car was registered to his wife, and it was reasonable to ask him to identify himself to check on the validity of that statement. Further, Bleiler saw the knife on McIntosh and what he thought was a weapon in the car, and the explanation for their conduct and appearance was suspicious. It was reasonable to believe that O'Neal was armed and dangerous. The *Terry* stop and frisk that followed led to discovery of the burglary tools and ripened into probable cause to arrest for commission of a felony.

■ *State v. Williams, supra,* sets forth the requirements for a valid investigatory *Terry* stop. First, the initial interference with the suspect's freedom of movement must be justified at its inception. Second, it must be reasonably related in scope to the circumstances which justified the interference in the first place. *Williams,* at 739. "To justify an intrusion, the police officer must be able to point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Williams,* at 739 (quoting *Terry v. Ohio, supra* at 21).

Here, the interference was justified at its inception. The officers made a valid traffic stop for the defective license plate lamp. In analyzing the second requirement, there are three relevant factors to consider: the purpose of the stop, the amount of physical intrusion on the suspect's liberty, and the length of time the suspect is detained. *Williams,* at 740. The officers had reasonable grounds to question O'Neal after the initial traffic stop, and after receiving suspicious answers to their questions, the officers were justified in further detaining him. Similarly, as circumstances became more suspicious, the increasing scope and intensity of the stop, *i.e.,* the intrusion on O'Neal's liberty, were justified. In addition to their lack of identification and questionable explanation for their wet and dirty clothes, Bleiler saw a knife on McIntosh and what he thought was a

weapon under the front seat of the car. While investigating the object Bleiler found what he thought were burglary tools. A patdown of O'Neal also produced what Bleiler thought were burglary tools. There is no indication that the length of the detention was excessive. Rather, it was limited to the length of time needed to investigate the increasingly suspicious circumstances.

O'Neal argues that because the items found under the seat are not specifically enumerated as burglary tools in RCW 9A.52.060 and because they have legitimate uses, they do not constitute burglary tools, and Officer Bleiler did not have probable cause to arrest O'Neal. The statute includes within its definition "any . . . implement adapted, designed, or commonly used for the commission of burglary". Considering the totality of the circumstances in which the tools were discovered, *i.e.,* the late hour, the high incidence of burglary in the area, the lack of identification, the suspicious explanation of their previous whereabouts and dirty clothes, and the fact that both McIntosh and O'Neal were carrying knives, Officer Bleiler properly recognized that the tools could be used for an illegal purpose. The initial investigatory *Terry* stop ripened into probable cause to arrest O'Neal for possession of burglary tools.

> [P]robable cause for arrest should be examined in the light of the arresting officer's special experience, and . . . the standard should be, not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious, and prudent officer.

*State v. Scott,* 93 Wn.2d 7, 11, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980) (quoting *State v. Todd,* 78 Wn.2d 362, 367, 474 P.2d 542 (1970)).[1]

---

[1]We note that it is immaterial that the officer stated he was arresting O'Neal when the facts and circumstances known to him arguably may have only justified an investigatory detention. It is critical only that the officer had authority to exert the degree of control over O'Neal that was exerted.

The police conduct should be judged in terms of what was done rather than what the officer involved may have called it at the time. If an officer tells the suspect he is under arrest but then conducts only a frisk and finds a weapon, a

The facts of this case distinguish it from *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983). First, in *Ringer* the persons were already under arrest and sitting handcuffed in a patrol car while the officers searched their vehicles without warrants. Second, the use of a *Terry* frisk for the safety of the officers was not presented in *Ringer.* The officers here did in fact follow the admonishment of *Ringer* by obtaining a search warrant to examine the vehicle and its contents.

O'Neal also asserts that the arrest and search of McIntosh were unconstitutional. We have held in the companion case of *State v. McIntosh,* 42 Wn. App. 573, 712 P.2d 319 (1986), that they were valid.

The trial court did not err by admitting the evidence sought to be suppressed. Affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court March 21, 1986.

---

later determination that grounds for arrest were lacking should not render inadmissible the discovered weapon if there were in fact grounds for a stop and the frisk.

(Footnote omitted.) 1 W. LaFave & J. Israel, *Criminal Procedure* § 3.8, at 297 (1984). The detention and frisk of O'Neal did not exceed the authority conferred upon the officers by law. In addition, *see State v. Dorsey,* 40 Wn. App. 459, 471 n.7, 698 P.2d 1109 (1985).