[No. 7049-2-III.   Division Three.   December 4, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
CLARENCE FRANKLIN, *Appellant.*

Creek channel is not part of the natural flow and is not public water subject to appropriation.

*Richard L. Cease, Public Defender,* and *Frank Conklin, Special Public Defender,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark D. Colwell, Deputy,* for respondent.

THOMPSON, J.—John Franklin appeals his convictions for first degree attempted murder and first degree robbery. We affirm, but remand for resentencing.

This appeal is based on contentions that various sections of the Sentencing Reform Act of 1981 (SRA) are unconstitutional, the court erred in computing the offender score, and the right to a fair trial was denied by the judge's ex parte communication with a juror.

On November 20, 1984, at approximately 4 p.m., a man entered a Dorner's Pizza Parlor in Spokane, robbed the clerk and stabbed her twice in the back. Despite her injuries, the clerk ran from the pizza parlor and flagged down passing motorists. The motorists chased the assailant into the basement of a nearby apartment and when he later emerged, he was apprehended by police and identified as this defendant, John Franklin. Mr. Franklin was convicted

of first degree attempted murder and first degree robbery.

First, Mr. Franklin raises several federal and state constitutional issues concerning the application of the SRA, RCW 9.94A.370, and the use of his prior convictions. He contends under both the federal and state constitutions his rights against self–incrimination were violated; the State failed to meet its burden of proving the existence of prior convictions beyond a reasonable doubt; the State failed to prove he was the same individual named in certified copies of prior convictions; and it failed to prove the constitutional validity of prior convictions before they were counted in the offender score. Each of these issues was decided adversely to Mr. Franklin in *State v. Ammons,* 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986).

In substance, Mr. Franklin complains that RCW 9.94A-.370 violates his right against self–incrimination since he is either forced to give up his right to remain silent and object to portions of the presentence report or, conversely, remain silent and allow the court to draw adverse inferences from that silence. *Ammons* held this statute does not compel a defendant to provide any information. The defendant has the right to know of and object to adverse facts in the presentence report and, if he contests any facts, an evidentiary hearing must be held before they can be used.

Likewise in *Ammons,* the court determined that requiring proof of prior convictions by only a preponderance of the evidence as provided in RCW 9.94A.110 was permissible. As to the identification of Mr. Franklin as the person named in prior convictions, the identity of names is sufficient proof in the absence of rebuttal by the defendant declaring under oath that he is not the same person named in the prior conviction. *Ammons,* at 189–90. Mr. Franklin did not rebut the State's proof that he was the person named in the prior convictions, nor was any evidence presented that he was not the individual named in the FBI identification report. Finally, contrary to Mr. Franklin's contentions, the State does not have the affirmative burden of proving the constitutional validity of a prior conviction

before it can be used in a sentencing proceeding. *Ammons,* at 187.

Mr. Franklin next contends the court erred when computing his offender score by including an out–of–state conviction for aggravated battery and assigning a score of 3 to that conviction. In 1964, Mr. Franklin was convicted of aggravated battery in Illinois as the result of an incident wherein he stabbed a victim 13 times and left him lying in an alley in 15–degree weather. Mr. Franklin was paroled on that conviction August 9, 1968, and discharged from parole June 23, 1969. In sentencing Mr. Franklin, the trial court found the Illinois aggravated battery equal to a class A felony in this state and as a result assigned it a score of 3.

Former RCW 9.94A.360 provides:

> The designation of out–of–state convictions shall be covered by the offense definitions and sentences provided by Washington law.

According to the Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* I–8 (1984): "For a prior out–of–state or foreign conviction, compare the elements of the offense in that jurisdiction to Washington State laws to determine how to score the offense . . ."

Under Illinois law: "A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery." Ill. Ann. Stat. ch. 38, § 12–4 (Smith–Hurd 1979).

This crime matches the Washington offense of assault in the second degree which is defined by RCW 9A.36.020 as:

> (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
>
> . . .
>
> (b) shall knowingly inflict grievous bodily harm upon another with or without a weapon; . . .

In Illinois, the sentence for aggravated battery, a class 3 felony, is not less than 2 years nor more than 5 years. Ill.

Ann. Stat. ch. 38, ¶ 1005-8-1(6) (Smith-Hurd 1982). This sentence is comparable to a class C felony in Washington. RCW 9A.20.020(1)(c). However, under Washington law, the crime Mr. Franklin was convicted of more closely compares to an assault in the second degree, which is a class B felony. RCW 9A.36.020(2). Thus, although the definitions of aggravated battery in Illinois and assault in the second degree in Washington are comparable, the sentences differ.

Under RCW 9.94A.360(12), if aggravated battery is regarded as a class B felony, it would be included in Mr. Franklin's offender score because he was convicted of an additional felony within 10 years of being released. (Mr. Franklin was paroled on August 9, 1968, and convicted of second degree burglary on August 24, 1973.) However, if the aggravated battery is regarded as a class C felony, it would not be included in Mr. Franklin's offender score because his next felony conviction was more than 5 years after his release.

Mr. Franklin contends the Illinois aggravated battery conviction should be designated a class C felony. As such, it had "aged" and could not be used in computing the offender score. The State concedes aggravated battery is not a class A felony, but argues the Illinois conviction compares to a class B felony and thus does not wash out, for purposes of offender score computation. We agree.

In construing statutes, we must carry out the Legislature's intent. *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983). The spirit and purpose of an enactment should prevail over express but inept wording. *State v. Burke,* 92 Wn.2d 474, 598 P.2d 395 (1979).

The Legislature, in drafting the SRA, created a plan by which each person sentenced is given an "offender score" according to his prior criminal record. RCW 9.94A.360. It would be inconsistent with the stated purpose of the SRA to construe the statute so that a defendant who committed a violent felony out of state avoids the imposition of a greater sentence merely because the other state imposes a shorter prison term than would Washington. The actual

crime the defendant is convicted of committing and the mental state involved must be the determining factors and not the length of punishment. To hold otherwise would frustrate the legislative intent to ensure that punishment is proportionate to the offense, the criminal history, and to others committing similar crimes. Nor is the sentencing judge limited to looking solely at a foreign statute when determining the offender score. He may look to the evidence and the information contained in the presentence report when determining the grade of the offense. *State v. Southerland,* 43 Wn. App. 246, 716 P.2d 933 (1986). We conclude the court should have computed Mr. Franklin's offender score by considering the Illinois aggravated battery conviction a class B second degree assault rather than a class A first degree assault. Therefore, we remand for resentencing.

Next, Mr. Franklin contests the judge's determination the convictions did not arise from the same criminal conduct. As a result, the sentencing judge counted each conviction as a separate offense. Mr. Franklin argues, though attempted first degree murder and first degree robbery are separate crimes, under the facts in this case, both were encompassed in the same criminal conduct and therefore should have been counted as one crime in computing criminal history. We are constrained to agree.

Former RCW 9.94A.400 provides:

Consecutive/concurrent sentences. (1)(a) Except as provided in (b) of this subsection, whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.

The phrase "[s]eparate crimes encompassing the same criminal conduct" has recently been construed in *State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986). Although *Edwards* is distinguishable from this case in that it con-

cerned multiple victims and two separate crime sites, nevertheless, the citations and reasoning interpreting the intent of the Legislature are relevant. The Sentencing Guidelines Commission implies that this phrase has the same meaning as "the same course of conduct" language used in the juvenile code. Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* pt. II, § 9.94A.400 comment, at II–40 (1984).

The phrase "the same course of conduct" has been interpreted in *State v. Adcock,* 36 Wn. App. 699, 706, 676 P.2d 1040, *review denied,* 101 Wn.2d 1018 (1984), where the court observed:

> Where the legislature has not defined words used in the act, the court must then determine as best it can the meaning of the language in accordance with the legislative intent and common understanding so as to prevent absurdities and to advance justice.

(Footnotes omitted.) 1A C. Sands, *Statutory Construction* § 20.08 (4th ed. 1972).

"Course of" is defined in *Webster's Third New International Dictionary* (1969) as: "4: an ordered continuing process, succession, sequence, or series". Adcock's November 1981 offenses were not shown to have been committed as part of any ordered or continuing sequence or under any recognizable scheme or plan. The three offenses were instead shown to have been committed at different locations and at different times during the day, indicating a random series of events.

"Encompass" is defined in *Webster's Third New International Dictionary* (1976) as "to form a circle about: encircle". Thus, even if the phrase "encompassing the same criminal conduct" is not identical in meaning to the phrase "course of conduct", the semantical difference is marginal. This interpretation is in accord with the interpretation of a similar Minnesota statute. Since Washington's sentencing guidelines are based in part on Minnesota's, cases interpreting the Minnesota guidelines are persuasive. The Minnesota statute uses the language "a person's conduct" rather than "encompassing the same criminal conduct". Minn. Stat. Ann. § 609.035 (West Supp. 1986). *State v.*

*Banks,* 331 N.W.2d 491, 493 (Minn. 1983) interprets that language as we have done above. *See also State v. Kutchara,* 350 N.W.2d 924, 928 (Minn. 1984).

Mr. Franklin's offenses were committed as part of a continuing sequence. He entered the pizza parlor, demanded money, and ordered the clerk to move back and kneel. He then approached the clerk from behind and stabbed her twice. The offenses were committed at the same location, at the same time, and against the same victim.

The court takes note that this result appears inconsistent with the overall purpose of the SRA to ensure that punishment for a criminal offense be proportionate to the seriousness of the offense and the offender's criminal history; since multiple crimes are more serious, counting each offense separately so as to increase the offender score and thus impose greater punishment would seem to better promote the public interest. But, although we may conclude certain provisions of the SRA fail in their announced purpose, nevertheless we are obligated to apply the law as written by the Legislature. Therefore, on remand for resentencing, both convictions should be counted as one crime in determining Mr. Franklin's criminal history score.

The final issue is whether Mr. Franklin was denied his right to a fair trial because the judge questioned a juror outside the presence of the defendant and counsel. On the first day of trial one of the jurors smiled and winked at Mr. Franklin. After this incident was called to the judge's attention, it was discussed briefly by the deputy prosecutor and defense counsel in the defendant's presence. Then the court decided to address the problem by questioning the juror in chambers on the record. Defense counsel voiced his concern that any inquiry might put undue pressure on the juror, but made no objection to the proposed procedure. Thereafter, in the presence of a court reporter, the judge held a short in camera conversation with the juror to determine whether she knew the defendant. No objection was made to this procedure until this appeal.

Although *State v. Caliguri,* 99 Wn.2d 501, 508–09,

664 P.2d 466 (1983) restated the long–standing rule that there should be no communication between the court and the jury in the absence of the defendant, nevertheless, under the facts in this case we see no impropriety amounting to error. Perhaps the better procedure would have been to conduct the questioning in open court in the presence of counsel and defendant in the absence of other jurors. However, the court gave advance notice of its intended procedure and gave counsel an opportunity to be heard and object or suggest an alternate proposal for addressing the problem. Having failed to object, counsel is deemed to have acquiesced in the procedure. The court took the added precaution of recording the session and the record indicates the questions asked and answers given were innocuous and involved no prejudice to the defendant.

We remand for resentencing to correct the sentencing errors, but affirm in all other respects.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied January 8, 1987.

Review granted by Supreme Court March 3, 1987.