[Nos. 6977-0-III; 6978-8-III. Division Three. December 30, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT B. GONZALES, *Appellant.*

*John D. Knodell III,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

THOMPSON, J.—Robert Gonzales was convicted of two counts of burglary in the second degree, two counts of theft, and in a separate trial, three counts of possession of a controlled substance. He appeals the convictions and the sentences imposed. We reverse in part and remand for resentencing.

At 4 a.m. on August 14, 1984, Officer John Mays of the Moses Lake Police Department was on patrol in a Moses Lake lakeshore residential area. Officer Mays' patrol was in response to a recent rash of burglaries. Near the Lakeway Drive home of Mrs. Marguerite Conklin, Officer Mays observed a vehicle's headlights come on. Since he had not seen this particular car in the area before, he began following it. Officer Mays observed the car speed up for a short distance, then fail to come to a complete stop at a stop sign and fail to signal a turn. He also noticed the passenger glancing back at his patrol car. The officer felt the driver was trying to elude him.

After following the car for several blocks, noting the license number, and determining the registration had expired, he activated his lights and pulled the vehicle over. Before approaching the car, he called for a backup. The officer then confronted the driver, whom he recognized as Mr. Gonzales and knew to be on parole for burglary. He asked Mr. Gonzales what was going on. The defendant responded that he did not know, that the "other guy" had called him up on the phone and told him to meet him up there, and "he didn't know anything that was in the car". Officer Mays saw a portable TV in the rear seat behind

the driver, and noted both Mr. Gonzales and his passenger were wearing dark clothing.

At this point, Officer Mays asked the defendant to get out of the car and step to the back of the vehicle. Officer Christiansen then arrived and Officer Mays asked him to watch the passenger. Mr. Gonzales was frisked and placed in the patrol car but not handcuffed. Officer Mays then returned to the passenger side of the stopped car to question its passenger, Ronzell Vernor, who he knew had a juvenile burglary record. He told Mr. Vernor to step outside of the vehicle. In doing so, Mr. Vernor kicked a small brown package onto the roadway. Officer Christiansen advised Officer Mays that he could see a weapon under the car's front seat. The package was examined, found to be unopened, and mailed by the Crescent Department Store to a Mrs. K. Conklin at a Lakeway Drive address. Mr. Vernor was then placed under arrest and Mr. Gonzales was handcuffed. Both suspects were then transported to the Moses Lake Police Department, where Mr. Gonzales was told he was under arrest.

While Mr. Gonzales was being transported to the station, another officer was sent to the Conklin residence to see if it had been burglarized. Officers confirmed the Conklin home had been burglarized. Property taken from the Conklin home and the home of William Calderon was later found in Mr. Gonzales' vehicle pursuant to a warrant authorizing the search.

At the police station, during booking, Mr. Gonzales volunteered to allow a search of his home. Officer Christiansen obtained a written consent to search from the defendant, which Officer Mays reviewed in detail with Mr. Gonzales. After Officer Mays advised Mr. Gonzales of his rights, Mr. Gonzales executed a waiver of his *Miranda* rights.

Officer Mays and Officer Baltzell then proceeded to Mr. Gonzales' home, arriving around 6 a.m., and commenced to search for stolen property associated with the burglary. One room of the home was sublet to Ronzell Vernor. During the search, marijuana, capsules, pills, drug paraphernalia, and a

marijuana pipe were found in various locations in the home. Mr. Gonzales' wife, who was present during the search, was arrested for possession of a controlled substance.

Thereafter, Detective Tindall met with the defendant, confronted him with the seized contraband and again advised him of his rights. Detective Tindall discussed the possibility he might speak to the prosecutor about releasing Mrs. Gonzales on her own recognizance. Subsequently, Mr. Gonzales gave a statement incriminating himself with regard to the controlled substances.

Upon investigation, it was determined that the Calderon home had also been burglarized and Mr. Gonzales' footprint was found on the driveway behind the Calderon garage.

Mr. Gonzales was charged with two counts of burglary in the second degree, two counts of theft, and three counts of possession of a controlled substance. Defense motions to suppress evidence were denied and he was convicted by a jury on the burglary and theft counts. After a bench trial, he was also convicted on the three counts of possession of a controlled substance.

The prosecution asked the court to exceed the Sentencing Reform Act of 1981 (SRA) presumptive sentences for both the burglary and drug convictions. Following a "real facts" evidentiary hearing, the court entered findings of fact and conclusions of law giving reasons for its exceptional sentence of 43 months on the burglary and theft charges and 12 months on the drug charges. Mr. Gonzales appeals all the convictions and sentences.

### INVESTIGATORY STOP

Mr. Gonzales first argues the police exceeded the permissible scope of an investigatory stop and thereby illegally seized him. As a general rule, warrantless searches and seizures are per se unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). However, in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Supreme Court announced an

exception: the "stop and frisk" or investigatory stop. Such a stop need be supported by only a reasonably well founded suspicion of criminal activity based on specific and articulable facts, not necessarily rising to the level of probable cause to arrest. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). However, more intensive seizures require probable cause to arrest. *Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984).

Nevertheless, a *Terry* stop of an automobile is a "seizure" of its occupants for Fourth Amendment and Const. art. 1, § 7 purposes, and must, therefore, be reasonable. *Delaware v. Prouse,* 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *State v. Kennedy,* 107 Wn.2d 1, 4, 726 P.2d 445 (1986); *State v. Larson,* 93 Wn.2d 638, 648, 611 P.2d 771 (1980). An investigative stop must be temporary and last no longer than necessary to carry out the purpose of the stop. The investigative methods used must be the least intrusive means reasonably available to verify or dispel the police officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. at 500. The initial stop must be justified and its scope reasonably related to the initial justification. *Williams,* at 739–40. Three considerations in determining the proper scope of an investigatory stop are: "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained". *Williams,* at 740.

█ Here, the initial stop was justified, based on the traffic infractions and early morning presence of an unfamiliar car in the high crime area. *Delaware v. Prouse,* 440 U.S. at 663; *State v. Gluck, supra.* Officer Mays first questioned Mr. Gonzales about why he was there, thus directly linking the purpose of the stop to the intrusion. The officer knew Mr. Gonzales was on parole for burglary and knew his passenger had a prior juvenile burglary record. This knowledge, coupled with the answers given to questions asked, justified the conclusion a further short intrusion was neces-

sary to dispel suspicions. *See State v. Sweet,* 44 Wn. App. 226, 721 P.2d 560 (1986); *State v. McIntosh,* 42 Wn. App. 579, 712 P.2d 323 (1986). Mr. Gonzales gave an implausible explanation for his presence in the area at that time of the morning and further drew attention to items plainly visible in the car by denying connection with them. Mere placement in the patrol car to preserve the status quo did not exceed the scope of a *Terry* stop. *Sweet,* at 233; *State v. Gardner,* 28 Wn. App. 721, 725, 626 P.2d 56, *review denied,* 95 Wn.2d 1027 (1981). The continued detention was limited to the length of time needed to investigate the increasingly suspicious circumstances. *State v. McIntosh, supra.* Thus, up to this point, the police did not "unreasonably" seize Mr. Gonzales.

### PROBABLE CAUSE TO ARREST

■ The next question is whether the officers' reasonable suspicions ripened into probable cause to arrest the defendant prior to his actual arrest. Probable cause exists when an officer has reasonable grounds to believe a suspect has committed or is committing a crime based on circumstances sufficiently strong to warrant that conclusion. The test is one of reasonableness, considering the time, place, and circumstances and the officer's special expertise in identifying criminal behavior. *Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); *Gluck,* at 426; *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979). Presence in a high crime area can be taken into account to establish probable cause. *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974); 1 W. LaFave, *Search and Seizure* § 3.6(g) (1978). A defendant's criminal history may also be considered. *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *State v. Hoffman,* 64 Wn.2d 445, 449, 392 P.2d 237 (1964). In addition, improbable answers to questions may give rise to circumstances justifying a finding of probable cause. *State v. Sinclair, supra; State v. Goodman,* 42 Wn. App. 331, 338, 711 P.2d 1057 (1985). The question is whether actual knowledge of a bur-

glary was necessary, under the totality of circumstances presented, to support this arrest.

The officers took the handcuffed suspects to the station house before verifying that the Conklin home had in fact been burglarized. Officer Mays testified at the suppression hearing he asked another officer to check the Conklin home "to see if there had been a burglary, if we had enough to place the subjects under arrest at that time". In *State v. Belanger*, 36 Wn. App. 818, 677 P.2d 781 (1984), a suspect was questioned when observed in a high crime area under suspicious circumstances with a rifle barrel protruding from a duffel bag. After receiving unsatisfactory answers and seeing a pawn shop tag on one of the guns, the officer radioed for another officer to investigate whether a burglary had occurred. The court stated: "The officer then had the right to detain (seize) defendant for a reasonable time in order to ascertain if there had been a burglary in the area." *Belanger*, at 821. When the burglary was confirmed, probable cause to arrest arose.

Unlike *Belanger*, the officer here did not merely detain Mr. Gonzales at the scene in the patrol car; he handcuffed and transported him down to the police station. As the United States Supreme Court stated in *Florida v. Royer*, 460 U.S. 491, 499, 75 L. Ed. 2d 229, 103 S. Ct. 1319, 1325 (1983), "[n]or may the police seek to verify their suspicions by means that approach the conditions of arrest". *See also Dunaway*, 442 U.S. at 211–12. Confirmation of a crime did not take place until Mr. Gonzales was transported to the police station. While the totality of circumstances justified detention at the scene for a reasonable time to determine if a crime had been committed, the additional invasion of Mr. Gonzales' privacy by handcuffing and transporting him to the police station before probable cause to arrest existed constituted an illegal arrest under both the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution.

## "Open View" Observations

 Did this illegal arrest create a "poisonous fruit" issue? Should evidence seized from Mr. Gonzales' vehicle, pursuant to the search warrant, have been suppressed? Evidence discovered in "open view" as distinguished from "plain view" is not the product of a search within the meaning of the Fourth Amendment or Const. art. 1, § 7. *Kennedy*, at 10; *State v. Seagull*, 95 Wn.2d 898, 901, 632 P.2d 44 (1981); 1 W. LaFave § 2.2. There is no expectation of privacy shielding that portion of the interior of an automobile which can be viewed from outside by diligent police officers. *Texas v. Brown*, 460 U.S. 730, 740, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). As in *Brown*, the car here was lawfully stopped. Even though the arrest of Mr. Gonzales *after* viewing the addressed package and weapons was unlawful, the open view observation of weapons and potential evidence is not tainted by that *subsequent* illegality. Thus, these observations could validly form the basis for a search warrant, given the circumstances under which the observations were made. Evidence seized pursuant to that search warrant was therefore admissible.

## Consent To Search

Because Mr. Gonzales was arrested without probable cause, his subsequent consent at the police station to search his home must be analyzed to determine whether (a) the consent was involuntary or (b) obtained by exploitation of the prior illegal arrest. If either inquiry is in the affirmative, the consent is invalid and the evidence seized pursuant to that consent must be suppressed. *Florida v. Royer, supra; Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975); *State v. Byers*, 88 Wn.2d 1, 559 P.2d 1334 (1977), *overruled in part in State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984); *State v. Jensen*, 44 Wn. App. 485, 723 P.2d 443 (1986).

 Since Mr. Gonzales does not contend he was coerced or that his "will was overborne", the sole inquiry is whether consent was obtained by exploitation of the prior illegal

arrest. *Taylor v. Alabama,* 457 U.S. 687, 690, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982); *Dunaway v. New York, supra; Brown v. Illinois, supra; Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Byers, supra.* The analysis here is essentially the same as when confessions are obtained following illegal arrests. *Jensen,* at 490. A confession following an illegal arrest is admissible only if obtained "by means sufficiently distinguishable to be purged of the primary taint" and not through "exploitation of that illegality". *Byers,* at 8 (quoting from *Wong Sun,* 371 U.S. at 488). Several factors are considered in determining whether a confession, or a consent to search, is tainted by a prior illegal arrest: (1) temporal proximity of the arrest and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of *Miranda* warnings. *Taylor,* 457 U.S. at 690; *Brown,* 422 U.S. at 604–05; *Jensen,* at 490.

The consent followed almost immediately after the arrest, but time alone is not dispositive. *United States v. Berry,* 670 F.2d 583, 605 (5th Cir. 1982); *Jensen,* at 490. As to intervening circumstances, Mr. Gonzales had no contact with anyone other than the officers. Nevertheless, a *spontaneous* volunteered statement can itself be a significant intervening circumstance, sufficiently attenuated from the original police illegality to allow admission. *See United States v. Houle,* 620 F.2d 164 (8th Cir. 1980); *State v. Johnson,* 530 S.W.2d 690, 694 (Mo. 1975); *State v. Olds,* 569 S.W.2d 745 (Mo. 1978); 3 W. LaFave § 11.4, at 636.

Here, not only was the consent not asked for, but Mr. Gonzales was told he need not consent. The police here did not "exploit" the illegal arrest. *See Bretti v. Wainwright,* 439 F.2d 1042, 1046 (5th Cir.), *cert. denied,* 404 U.S. 943, 30 L. Ed. 2d 257, 92 S. Ct. 293 (1971); *State v. Fortier,* 113 Ariz. 332, 553 P.2d 1206, 1209 (1976); 2 W. LaFave § 8.2, at *653.*[1]

---

[1]Whether the statement was "voluntary" is, of course, not the key in deter-

Finally, the police misconduct in illegally arresting Mr. Gonzales was minor. The Supreme Court in *Brown v. Illinois*, 422 U.S. at 604, put particular emphasis in determining the issue of exploitation of prior illegality on the purpose and flagrancy of official misconduct. *See Wong Sun*, 371 U.S. at 486; 3 W. LaFave § 11.4, at 334 (Supp. 1986). Given the nonflagrant nature of the police misconduct, the spontaneity of the volunteered consent and absence of even an attempt by officers to exploit the illegal arrest prior to consent, we find the consent untainted by the prior illegality and thus valid.

## SCOPE OF CONSENT

█ The next issue concerns whether marijuana and pills seized during the search of Mr. Gonzales' home for stolen property should have been suppressed because they were outside the scope of the consent. The search incident to a valid consent may only encompass the limits explicit or implicit in the consent given. *State v. Johnson*, 71 Wn.2d 239, 243–44, 427 P.2d 705 (1967); *McNear v. Rhay*, 65 Wn.2d 530, 538–40, 398 P.2d 732 (1965); *State v. Cuzick*, 21 Wn. App. 501, 505, 585 P.2d 485 (1978).

Here, the consent to search was understood by Mr. Gonzales and the police officers themselves as limited to a search for stolen property; he consented in an effort to clear himself of a charge of burglary. The officer who seized the paper bag containing the marijuana testified it was his understanding he was searching for jewelry, radios, and equipment stolen in recent burglaries, and it was immediately apparent the bag was too light to contain such evidence. The bag was therefore outside the scope of the consent given.

---

mining the "exploitation" factor since voluntariness does not affect the issue here: the Fourth Amendment and Const. art. 1, § 7 question of whether a consent to search is "fruit of the poisonous tree". *Byers*, at 7. However, the spontaneous nature, *i.e.*, without any police questioning as a prompting factor, is relevant as a factor breaking the causal chain. Unlike in *Byers* and *Brown v. Illinois, supra*, the defendant here was not immediately questioned upon transport to the police station.

"PLAIN VIEW" SEIZURE

■ Nevertheless, the State argues that a further justification for a warrantless seizure, the "plain view" doctrine, is met. The plain view doctrine will justify a warrantless seizure of evidence if there is (1) a prior lawful justification for the intrusion, (2) inadvertent discovery of incriminating evidence, and (3) immediate recognition by the officer that he has evidence before him. *State v. Chrisman,* 94 Wn.2d 711, 715, 619 P.2d 971 (1980), *rev'd on other grounds,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982), *adhered to on remand,* 100 Wn.2d 814, 676 P.2d 419 (1984). If the police officer here did not immediately recognize the paper bag as containing narcotics or evidence of a crime, the exception is not met and the evidence must be suppressed. The officer testified that he knew it did not contain a radio or jewelry and, when lifting it out of the cabinet, could not clearly identify its contents. Without apparent knowledge of incriminating evidence, the paper bag and its contents were not subject to seizure under the plain view doctrine. *State v. Chrisman, supra; State v. Murray,* 84 Wn.2d 527, 534, 527 P.2d 1303 (1974), *cert. denied,* 421 U.S. 1004 (1975). Therefore, the marijuana should have been suppressed. The conviction for one count of possession of controlled substances is reversed.

As to the pill vial and its contents, the State also argues immediate recognition as contraband. The pills were found on a table in the hallway of Mr. Gonzales' home in a small, clear glass vial approximately 4 inches long and three-fourths inch in diameter. The trial court found that the pill vial "almost reeks of drug use and contraband". There is a question as to whether the name on the capsules was immediately recognizable.

However, "immediately apparent" is less than certain knowledge. The United States Supreme Court in *Texas v. Brown,* 460 U.S. at 742, held that an officer need only have probable cause to believe the object in plain view was incriminating evidence. *See also State v. Lair,* 95 Wn.2d 706, 716, 630 P.2d 427 (1981). Here, the clear vial contain-

ing capsules and a pill, viewed in context with the other evidence of drug use found in the home, such as the paraphernalia and marijuana pipe, gave the officers probable cause to believe the pills were controlled substances, even without firm knowledge of that fact. Unlike the crumpled brown paper bag containing the "baggie" of marijuana, it was immediately apparent the pill vial contained contraband. The plain view doctrine applies to the pills and their admission was not error.

### CONFESSION

■ The next issue is whether Mr. Gonzales' confession was voluntary. While the consent to search was valid, and not gained by exploitation of the illegal arrest, that cannot be said of the confession. First, Mr. Gonzales confessed only after being confronted with the illegally seized marijuana and the legally seized pills. When confronted with the fruits of an illegal seizure, it is readily apparent that a suspect confessed due to "exploitation of that illegality", whether or not the confession is "voluntary" for Fifth Amendment purposes. *Wong Sun; Byers*, at 9; 3 W. LaFave § 11.4, at 639. The realization that "the cat is out of the bag" certainly played an important role in Mr. Gonzales' decision to confess.

Additionally, it is undisputed that prior to the confession by Mr. Gonzales Detective Tindall promised Mr. Gonzales he would see if he could get Mrs. Gonzales released by talking to the prosecutor. Any direct or implied promise, however slight, or any threat, trick or cajolery may render a confession involuntary. *Miranda v. Arizona*, 384 U.S. 436, 476, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); *State v. Davis*, 73 Wn.2d 271, 282, 438 P.2d 185 (1968). While the implied promises here would not be enough, by themselves, to result in a finding of involuntariness under the Fifth Amendment, when coupled with the illegal seizure, the totality of the circumstances requires us to find the confession was obtained by exploitation of the prior illegality.

■ However, not all constitutional errors require reversal. *Chapman v. California,* 386 U.S. 18, 21, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* ___ U.S. ___, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). A violation of the Fourth Amendment and Const. art. 1, § 7 guaranty against illegal searches and seizures may be determined harmless, on appeal, where the court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of error. In applying the "overwhelming untainted evidence test" here, we find the physical evidence properly admitted so "overwhelming that it necessarily leads to a finding of guilt". *Guloy,* at 426. Thus, the conviction on two counts of possession of a controlled substance is affirmed.

### SUFFICIENCY OF THE EVIDENCE

Mr. Gonzales' next issue is whether there was sufficient evidence to convict him of burglary of the Calderon residence. In deciding an issue of sufficiency of the evidence to convict, the court views the evidence presented most favorably to the State and asks whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Hughes,* 106 Wn.2d 176, 721 P.2d 902 (1986); *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

■ While it is true, as Mr. Gonzales contends, mere possession of recently stolen property is insufficient evidence of burglary to make out a prima facie case, *State v. Mace,* 97 Wn.2d 840, 843, 650 P.2d 217 (1982), it will be sufficient if coupled with even slight collateral and corroborative evidence of guilt such as false or improbable explanations of possession, flight, or physical evidence of the defendant's presence at the scene of the burglary. *State v. Q.D.,* 102 Wn.2d 19, 28, 685 P.2d 557 (1984); *State v. Mace, supra; State v. Portee,* 25 Wn.2d 246, 253–54, 170 P.2d 326 (1946); *State v. Rodriguez,* 20 Wn. App. 876, 582 P.2d 904 (1978). More than slight corroborative evidence exists here

which could convince a rational trier of fact, beyond a reasonable doubt, of Mr. Gonzales' guilt. Sufficient evidence existed to convict Mr. Gonzales of the burglary and theft charges.

Mr. Gonzales further attacks the sufficiency of evidence to convict him of the possession of controlled substances charges. The issue here is whether evidence that narcotics were found hidden on nonexclusively possessed premises, at a time when the defendant was absent, was sufficient to convict Mr. Gonzales of possession. Because we have found the marijuana illegally seized, requiring reversal of that count of possession of a controlled substance, our discussion here only applies to sufficiency of the evidence to convict for the possession of the pills.

Possession of controlled substances may be proven by showing constructive possession. Dominion and control of the premises where drugs are found is sufficient to show constructive possession. *State v. Callahan,* 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968). Here, the evidence implies both dominion and control over the premises, albeit nonexclusive, and knowledge of the presence of controlled substances. This amounts to constructive possession. Mr. and Mrs. Gonzales had sublet only one room to Ronzell Vernor; they were primarily in control of the premises. In addition, the variety and placement in plain view of drugs and drug paraphernalia indicates knowledge of their presence in the home. The totality of the evidence supports the finding of constructive possession of the pills beyond a reasonable doubt.

SENTENCING

Next, we decide whether the trial court improperly exceeded the presumptive sentencing range.

A

BURGLARY AND THEFT CONVICTIONS

A trial court may impose a sentence in excess of the presumptive range under the SRA if it finds "considering the purpose of this chapter, that there are substantial and

compelling reasons justifying an exceptional sentence". RCW 9.94A.120(2). The court must "set forth the reasons for its decision in written findings of fact and conclusions of law". RCW 9.94A.120(3).

In imposing an exceptional sentence for the two counts of burglary in the second degree, one count of theft in the first degree, and one count of theft in the second degree, the trial court concluded:

> The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive *range* that is clearly too lenient in light of the purposes of this chapter as expressed in RCW 9.94A.[010].
>
> . . .
>
> The defendant's conduct involving multiple victims was a major economic offense in that the offense involved an actual monetary loss substantially greater than typical for the offense of burglary in the second degree and theft in the first degree.

(Italics ours.)

In addition, the court found Mr. Gonzales was in a position of trust or confidence and used "inside information" regarding the vulnerability of the Conklin home. This was based on testimony that Mr. Gonzales' grandmother and other members of Mr. Gonzales' family had worked for Mrs. Conklin in the past.

■■■ The court's review of the sentence is guided by RCW 9.94A.210(4), which states:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.[2]

The 2–part review in subsection (a) begins with whether the sentencing court's reasons for imposing an exceptional sentence are supported by the record. This is a factual

---

[2]Because we reverse the sentencing based on (a), we need not address Mr. Gonzales' contention that his sentences were "clearly excessive" under (b).

determination and the appellate court must uphold the reasons unless clearly erroneous. *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). Next, we must ask if the supported reasons justify imposing an exceptional sentence. Two major difficulties arise from the record.

Mr. Gonzales disputed the facts alleged by the prosecution as justifying an exceptional sentence. Therefore, a "real facts" hearing pursuant to former RCW 9.94A.370 was held. That section stated:

> The real facts shall be deemed proven at the evidentiary hearing *by a preponderance of the evidence.* Real facts that establish elements of a higher crime, a more serious crime, *or additional crimes* cannot be used to go outside the presumptive sentence range except upon stipulation.

(Italics ours.)

One of the victims, Mrs. Conklin, testified at the real facts hearing that considerably more property was missing from her home than was recovered from the defendant in a search of his car and house. Of particular importance was a 3–carat marquise cut diamond, worth approximately $35,000, and some treasured family mementos. The problem here stems from whether such evidence was properly before the court and whether the prosecution met its burden at the real facts hearing.

As noted, Mr. Gonzales was stopped almost immediately upon leaving the Conklin home. His car was searched thoroughly. In addition, Mr. Gonzales' home was searched before he had any opportunity to contact anyone. Neither the diamond nor any of the additional property was found. Physical evidence found at the scene, including a used tampon, indicated the possibility of several entries into the Conklin home. Aside from Mr. Gonzales' participation in the entry for which he was found guilty, no evidence was presented, other than generalized allegations that family members of Mr. Gonzales had worked for Mrs. Conklin, which would indicate he had taken the disputed property. The prosecution failed to prove by a preponderance the disputed real facts. Therefore, the sentencing court's find-

ings in this regard were clearly erroneous.

More specifically, even assuming the prosecution met its limited burden at the real facts hearing and proved Mr. Gonzales entered the Conklin home on another occasion and stole the disputed items, that entry would constitute another separate crime of burglary in the second degree. Such real facts may not be used to go outside the presumptive sentence range except upon stipulation. Former RCW 9.94A.370; *State v. Swanson*, 45 Wn. App. 712, 726 P.2d 1039 (1986). No stipulation was entered here.

As noted by the court in *State v. Harp*, 43 Wn. App. 340, 342–43, 717 P.2d 282 (1986): "Defendants will be held accountable for those crimes of which they are convicted, but not for crimes the prosecutor could not, or chose not to, prove". The additional property taken was a significant factor used by the court in exceeding the presumptive range. It found the crime to be a "major economic offense" and utilized the aggravating factor that the offense involved attempted or actual monetary loss substantially greater than typical for the offense. *See* former RCW 9.94A-.390(3)(b). Thus, the court erred in using this reason to justify an exceptional sentence.

In addition, the court found Mr. Gonzales used a position of trust to facilitate this major economic offense. While it was inferred Mr. Gonzales may have visited the Conklin home at one time prior to the date of the burglary, there was no evidence that such contact involved any trust, confidence, or fiduciary relationship with the victim, of a kind found in *State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986), even though other members of defendant's family may have occupied such a position of trust. There was no evidence those family members provided Mr. Gonzales with "inside information". Thus, the trial court's findings Mr. Gonzales used a position of trust are not supported by the record.

Finally, the court felt the "sentencing guidelines constitute grossly inappropriate and lenient punishment . . ." The court could not consider Mr. Gonzales' extensive

juvenile criminal history pursuant to former RCW 9.94A-.360(1). The court was also disturbed by the operation of former RCW 9.94A.360(11) in that it was compelled under then existing law to score all prior adult felony convictions served concurrently as one offense for purposes of the offender score. In 1980, Mr. Gonzales had been sentenced on three separate crimes with the sentences to run concurrently. The sentencing court considered proposed House Bill 348 in its findings of fact, and the sentence given was as if the prior felony counts had been separately considered, as urged by the prosecutor and as allowed by the proposed house bill. An exceptional sentence must be based on more than a mere belief a defendant's criminal history warrants a longer term of punishment than the standard range would allow. *Nordby,* at 518 n.4; *State v. Hartley,* 41 Wn. App. 669, 672, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). Also, the legislative wisdom behind an enactment, even assuming the Legislature subsequently changes the enactment to solve the purported problem,[3] is not a proper subject of judicial review. *State v. Ammons,* 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986).

Additionally, the court noted an aggravating circumstance resulting from the fact "operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive *range* that is clearly too lenient in light of the purposes of this chapter". (Italics ours.) That aggravating factor, in former RCW 9.94A.390(4)(h), is relevant to the consecu-

---

[3]RCW 9.94A.360 was changed by Laws of 1986, ch. 257, § 25 to read as follows with regard to the scoring of prior offenses where served concurrently, significantly increasing the sentencing court's discretion:

"(5) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:

"(a) Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently *whether those offenses shall be counted as one offense or as separate offenses,* and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used;" (Italics ours.)

tive/concurrent *sentencing* policy with regard to *current* offenses, not criminal history. *See* former RCW 9.94A.400; *Oxborrow*, at 534. While it is understandable that the court would feel the prior concurrent sentencing offender score problem involved a "loophole in the law", such cannot be an aggravating circumstance justifying an exceptional sentence. Consequently, we are constrained to reverse the burglary and theft sentences and remand for resentencing within the standard range.

## B
### CONTROLLED SUBSTANCE CONVICTIONS

The trial court appended the same findings and conclusions to justify its exceeding the presumptive range for the three counts of possessing a controlled substance as for the burglary and theft convictions. Because those findings relate to the property offenses and not the drug offense, we are left with the court's feeling the application of the multiple offense policy would result in a gross miscarriage of justice. Again, the criminal history scoring of Mr. Gonzales' prior concurrently served convictions was the problem and cannot form the basis for an exceptional sentence on the drug charges. *Hartley,* at 671–72. The sentences for pill possession are therefore reversed and remanded for resentencing within the standard range.

 Finally, did the court err in determining Mr. Gonzales' criminal history under the SRA by finding the convictions for burglary of the Conklin and Calderon homes, while separate crimes, did not encompass the same criminal conduct? The Washington Sentencing Guidelines Commission implies the phrase "[s]eparate crimes encompassing the same criminal conduct . . ." in former RCW 9.94A.400 has the same meaning as "the same course of conduct" used in the juvenile code. Washington Sentencing Guidelines Comm'n, *Implementation Manual* II–40 (1984). This court in *State v. Franklin,* 46 Wn. App. 84, 729 P.2d 70 (1986) and *State v. Green,* 46 Wn. App. 92, 730 P.2d 1350 (1986) agreed with this interpretation and applied the definition

found in *State v. Adcock,* 36 Wn. App. 699, 706, 676 P.2d 1040, *review denied,* 101 Wn.2d 1018 (1984).

As in *Adcock,* the two offenses here were not shown to have been committed as part of any ordered or continuing sequence, or under any recognizable scheme or plan. They were committed at different locations and against different victims, with no objective connection other than they both involved burglary of a residence. *See also State v. Huff,* 45 Wn. App. 474, 726 P.2d 41 (1986). They were random crimes, unlike *Franklin* and *Green.* As such, they were properly considered as separate crimes for purposes of computing current criminal history.

The burglary and theft convictions are affirmed, but the sentences imposed reversed and remanded for resentencing within the standard range. The conviction for one count of possession of a controlled substance (the marijuana) is reversed. The conviction for two counts of possession of controlled substances (the pills) is affirmed but the sentence imposed is reversed and remanded for resentencing within the standard range.

GREEN, C.J., and MCINTURFF, J., concur.