834

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH
LEWIS, *Appellant.*

*Robert J. Thompson,* for appellant.

*Dennis DeFelice, Prosecuting Attorney,* and *Ann Marie
DiLembo, Deputy,* for respondent.

GREEN, A.C.J.—On February 7, 1989, Kenneth Lewis was
found guilty of two counts of unlawful possession of cocaine
and heroin. Mr. Lewis appeals the court's denial of his
motion to suppress. We reverse.

Based upon information supplied by a confidential informant, search warrants were executed simultaneously for four Pasco residences, including one on West Bonneville and one on South 6th Avenue. The informant stated he had purchased and used drugs at all four residences. The warrant for the search of the West Bonneville address also named several individuals to be searched in connection with that residence, including Mr. Lewis. The warrant did not limit the search of Mr. Lewis to that particular residence.

When police executed the search warrant for South 6th Avenue, they seized Mr. Lewis who happened to be present at that address. Mr. Lewis was immediately handcuffed, frisked for weapons, read his *Miranda* rights and transported to the police station to be strip searched and questioned regarding the burglary of an evidence locker.[1] While exiting the patrol vehicle, four $1 bills dropped from Mr. Lewis' hand. An officer picked them up and, as he riffled through the bills, he found a packet of heroin. Later, while Mr. Lewis was being booked for possession of heroin, a bindle of cocaine was found between his fingers. Mr. Lewis was convicted and this appeal follows. Although Mr. Lewis has focused his appeal on issues related to an illegal search,

---

[1]The findings stated:

"(2) On November 20, 1988, an evidence locker at the Pasco Police Department was burglarized. Money, guns, narcotics, and a blue satchel were stolen from that evidence locker. Pasco police officers were given information by a confidential informant who gave officers information in the past that proved to be correct. During the period between November 20, 1988, and November 22, 1988, this confidential informant told police officers that on November 21, 1988, he or she observed the defendant and another man known as Tony Elias, a/k/a Francisco Elias in a house in Pasco, Washington. The informant told officers that the defendant and Mr. Elias had in their possession money, narcotics, guns and a blue satchel. The defendant and Mr. Elias told the informant that they had just ripped someone off. The informant described the blue satchel and several guns to the Pasco police officers. The descriptions were similar to the guns and blue satchel taken in the evidence locker burglary on November 20, 1988.

"(3) The defendant and Tony Elias were in the Franklin County Jail together prior to the evidence locker burglary. Mr. Elias was an outside trustee during his stay at the Franklin County Jail. *Defendant and Mr. Elias were not in custody on November 20, 1988.*" (Italics ours.)

our disposition of the appeal is based on what we determine was an illegal arrest.

Mr. Lewis has not challenged the validity of the search warrant for the South 6th Avenue residence. He only claims the warrant for the West Bonneville residence did not authorize a search of his person at a different residence. We need not reach this issue because no search was conducted there; rather, the officer chose to transport Mr. Lewis to the station intending to search him there.

■ There is conflicting testimony over whether Mr. Lewis was arrested at the residence. An arrest occurs when a suspect reasonably believes his freedom of action has been curtailed. *State v. Short,* 113 Wn.2d 35, 41, 775 P.2d 458 (1989) (citing *State v. Watkins,* 53 Wn. App. 264, 274, 766 P.2d 484 (1989)). One officer who was at the residence stated he did not arrest Mr. Lewis but was only transporting him to the station to be strip searched in private[2] and to be questioned there by other detectives regarding the burglary of a police evidence locker.[3] Before doing so, Mr. Lewis was advised of his *Miranda* rights at the house, handcuffed and placed in the patrol car. The officer also testified Mr. Lewis was not free to leave. A second officer's affidavit stated Mr. Lewis was "arrested" at the residence and then taken to the police department. On these facts, it is evident Mr. Lewis was under arrest.

■ No warrant had been issued for the arrest. Absent a warrant, the question is whether probable cause existed to charge Mr. Lewis with a crime. *State v. Bonds,* 98 Wn.2d 1, 8, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). Here, there is no evidence Mr. Lewis possessed illegal drugs

---

[2]Mr. Lewis does not address the reasonableness of the officer's intent to conduct a strip search.

[3]There was also some discussion during this proceeding concerning the existence of a bench warrant issued because Mr. Lewis did not appear at a court hearing on November 9. A few days later, the deputy prosecuting attorney informed the police department of the warrant even though it was not formally issued until December 6.

other than his presence at the South 6th Avenue residence during the execution of the search warrant. Furthermore, the informant only stated he used drugs with Mr. Lewis at the West Bonneville residence. Neither was there probable cause to arrest Mr. Lewis for burglary of the evidence locker as acknowledged by the police officers and the trial court.

▪ The remaining question is whether Mr. Lewis could be detained and transported to the station for questioning in connection with the burglary of the evidence locker under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *Terry* held a suspect may be stopped if the officer has a reasonably well–founded suspicion of criminal activity based on specific and articulable facts, not necessarily rising to the level of probable cause to arrest. *State v. Gonzales,* 46 Wn. App. 388, 394, 731 P.2d 1101 (1986). An investigatory stop must be temporary and last no longer than necessary to carry out the purpose of the stop. The investigative methods used must be the least intrusive means reasonably available to verify or dispel the police officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *Gonzales,* at 394. Crime detection is a legitimate purpose for an investigative stop. *State v. Kennedy,* 107 Wn.2d 1, 5–6, 726 P.2d 445 (1986).

The scope of an investigative stop is limited by *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). There, the Court ruled the police could not transport a murder suspect to the station for interrogation without telling him he was under arrest and without the usual at–the–station trappings of arrest. *See also Hayes v. Florida,* 470 U.S. 811, 84 L. Ed. 2d 705, 105 S. Ct. 1643 (1985); *United States v. Ceballos,* 812 F.2d 42 (2d Cir. 1987); *see* 3 W. LaFave, *Search and Seizure* § 9.2(g) (2d ed. 1987). Here, in the admitted absence of probable cause to arrest Mr. Lewis for the burglary of the evidence locker, his transportation to the station exceeded the scope of a permissible *Terry* stop and was an arrest without probable

cause. Thus, we are constrained to reverse the conviction and dismiss the charges.

Reversed and dismissed.

THOMPSON and SHIELDS, JJ., concur.

Reconsideration denied February 7, 1991.

Remanded to the Court of Appeals at 116 Wn.2d 1023 (1991).