FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8: 56

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42570-0-II |
| Respondent, | |
| v. | |
| ALLAN ROBERT SIMMONS, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Allan Robert Simmons appeals his standard-range sentence for first degree rape, imposed on remand for resentencing after an earlier appeal from his original sentence; he also challenges the legal financial obligations (LFOs) that the resentencing court carried forward from his original judgment and sentence. Simmons argues that defense counsel rendered ineffective assistance by (1) erroneously stipulating to the comparability of a prior Illinois conviction for offender score purposes at resentencing, (2) unreasonably allowing Simmons to participate in the Department of Corrections (DOC) presentence interview without a lawyer at his original sentencing, and (3) failing to object to the resentencing court's consideration of the original presentencing report. He also argues that insufficient evidence supports the resentencing court's finding that he has the ability or likely future ability to pay his LFOs. Holding that Simmons' counsel did not render ineffective assistance and that his LFO challenge is not ripe, we dismiss Simmons' appeal.

No. 42570-0-II

## FACTS

### I. ORIGINAL SENTENCING; FIRST APPEAL

On October 15, 2009, a jury found Simmons guilty of first degree rape and second degree assault with sexual motivation. Before sentencing, he participated in a presentence investigation interview with the DOC at the Thurston County jail. During this interview, Simmons described the circumstances of his three earlier felony convictions: (1) a 2005 Illinois aggravated battery conviction, (2) a 2007 Illinois robbery conviction, and (3) a 2008 Washington second degree theft conviction. Simmons also gave his version of the events that led to his current first degree rape conviction.

At Simmons' original 2009 sentencing, the State presented evidence of a 2005 Illinois aggravated battery[1] conviction[2] and a 2007 Illinois robbery conviction as "most serious offenses"[3] to qualify him under RCW 9.94A.570 of the Persistent Offender Accountability Act

---

[1] Our opinion in Simmons' first appeal calls his 2005 Illinois aggravated battery an aggravated "assault." *State v. Simmons*, noted at 162 Wn. App. 1010, 2011 WL 2176485, at *2. The parties' briefs and the record in the instant appeal, however, refer to this conviction as aggravated "battery," the term that the Illinois statute uses and that we also use here.

[2] The State's 2009 sentencing brief included the Illinois statute, evidence that the Simmons "broke the jaw of the victim by intentionally kicking and stomping the victim's head," and that he had pled guilty. Supplemental Clerk's Papers at 63.

[3] RCW 9.94A.030(32). The legislature amended RCW 9.94A.030 in 2009, 2010, 2011 and 2012. LAWS OF 2009, ch. 375, § 4, ch. 28, § 4; LAWS OF 2010, ch. 274, § 401, ch. 267, § 9, ch. 227, § 11, ch. 224, § 1; LAWS OF 2011, ch. 87, § 2, 1st Spec. Sess., ch. 40, § 8; LAWS OF 2012, ch. 143, § 1. These amendments did not alter the statute in any way relevant to this case (other than renumbering the sections in 2010 and 2011); accordingly, we cite the current version of the statute.
    RCW 9.94A.525(3). The legislature also amended RCW 9.94A.525 in 2010 and 2011. LAWS OF 2010, ch. 274 § 403; LAWS OF 2011, ch. 166, § 3. Similarly, these amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

(POAA). "Simmons conceded that [his 2005 Illinois aggravated battery legally and factually] compared to a most serious offense in Washington";[4] but he contested the comparability of his 2007 Illinois robbery conviction. The trial court ruled that Simmons' 2007 Illinois robbery conviction was comparable to a most serious offense in Washington and sentenced Simmons under the POAA to life without the possibility of parole. The trial court also ordered Simmons to pay the minimum mandatory LFOs of $600.

Simmons appealed his convictions and life sentence, arguing for the first time that (1) his current rape and second degree assault with sexual motivation convictions violated double jeopardy principles, (2) his prior Illinois robbery conviction was not comparable to a most serious offense in Washington,[5] and (3) his defense counsel had been ineffective in failing to argue at sentencing that his assault and rape convictions constituted the same criminal conduct for offender score calculation purposes.[6] *Simmons*, 2011 WL 2176485, at *6, n.4.

Simmons did not similarly argue, however, that his 2005 Illinois aggravated battery conviction was not comparable to a Washington felony for persistent offender sentencing purposes or that trial counsel had rendered ineffective assistance in having conceded legal and factual comparability. Nor did Simmons argue that trial counsel had rendered ineffective

---

[4] *State v. Simmons*, noted at 162 Wn. App. 1010, 2011 WL 2176485, at *2.

[5] *Simmons*, 2011 WL 2176485, at *1.

[6] Because we vacated Simmons' conviction for second degree assault with sexual motivation on other grounds in his first appeal, we did not address his ineffective assistance argument based on trial counsel's failure to argue at sentencing that this assault conviction constituted the "same criminal conduct" as the rape conviction.

assistance in having failed to object to the trial court's consideration of Simmons' presentence report or in having failed to object to the trial court's imposition of LFOs.[7]

In Simmons' first appeal, we held (1) "as charged," the second degree assault with sexual motivation "had no purpose independent of the rape,"[8] constituted double jeopardy, and, therefore, must be vacated; and (2) because Simmons' prior 2007 Illinois robbery conviction was not comparable to robbery in Washington, the trial court erred in sentencing him as a persistent offender.[9] We remanded to the trial court to vacate Simmons' conviction for second degree assault with sexual motivation and to resentence him for only the first degree rape conviction. *Simmons*, 2011 WL 2176485, at *1, *3, *6.

## II. RESENTENCING ON REMAND; SECOND APPEAL

At Simmons' 2011 resentencing hearing on remand, both parties agreed on his criminal history and offender score of three, based on the same convictions that the trial court had considered during his original 2009 sentencing (except for the 2007 Illinois robbery, that we had excluded in his first appeal): Simmons' 2005 Illinois aggravated battery conviction and his Washington second degree theft conviction. The trial court resentenced Simmons to a standard range sentence of 160 months to life in prison.

---

[7] Our opinion in Simmons' first appeal did not mention LFOs, either as an argument he raised or an issue we addressed. *See Simmons*, 2011 WL 2176485. In the instant appeal, Simmons offers no explanation for his failure to challenge his LFOs in his first appeal.

[8] *Simmons*, 2011 WL 2176485, at *1.

[9] As we have already noted, our vacation of one of Simmons' two convictions in his first appeal rendered moot his ineffective assistance of counsel claim based on trial counsel's failure to argue that Simmons' two 2009 convictions constituted the same criminal conduct; therefore, we did not further address this issue. *See Simmons*, WL 2176485, at *6, n.4.

No. 42570-0-II

The trial court also imposed community custody terms. It retained and carried forward its original 2009 order that Simmons pay $600 in LFOs. But it did not set restitution, instead reserving restitution for some later time.[10] Simmons appeals his standard-range sentence imposed on remand, including his LFOs.

## ANALYSIS

### I. ASSISTANCE OF COUNSEL AT RESENTENCING

Simmons first argues that he has a right to appeal his standard-range sentence imposed on remand. He contends that his defense counsel rendered ineffective assistance during resentencing on remand in (1) stipulating that his Illinois aggravated battery conviction was comparable to a Washington felony and (2) failing to object to the trial court's consideration of his presentence report.

Citing *State v. Barberio*, 121 Wn.2d 48, 50-51, 846 P.2d 519 (1993), the State counters that we cannot consider Simmons' arguments in this second appeal because (1) he failed to raise them in his first appeal; (2) after his first appeal, he failed to raise them to the trial court during resentencing on remand, thus denying the trial court an opportunity to address these arguments; and (3) in resentencing on remand, the trial court "made only corrective changes" to Simmons' original judgment and sentence, "amending" the judgment and sentence to reflect our reversal of one of Simmons' convictions in his first appeal, thereby precluding additional appellate review of the otherwise original judgment and sentence. Br. of Resp't at 8.

---

[10] The trial court stated: "I'm going to reserve restitution. I'll impose the court costs that were imposed before which are the minimum that the Court can order." Verbatim Report of Proceedings at 14.

5

Assuming, without deciding, that the trial court exercised independent judgment during the resentencing hearing on remand, we explore Simmons' arguments only to the extent necessary to determine whether he can appeal his standard-range sentence in this instance. We hold that (1) Simmons' counsel was not deficient in stipulating to the comparability of the out-of-state conviction that Simmons did not previously challenge; and (2) the resentencing outcome would not have differed had counsel objected to the presentencing report. Because Simmons does not show any defect in his sentencing procedure, he cannot appeal his standard range sentence.

A. Appealability; Standard of Review

The law is well-settled that generally a defendant cannot appeal a standard-range sentence. *See* RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Nevertheless, a defendant can appeal a standard-range sentence if the sentencing court failed to follow proper procedures, including offender score calculation procedures. *See State v. Autrey*, 136 Wn. App. 460, 469, 150 P.3d 580 (2006). In those instances, appellate review is available to correct legal errors or abuses of discretion in the determination of what sentence applies.[11] *Williams*, 149 Wn.2d at 147. Ineffective assistance of counsel at sentencing could fall within such an exception.

An ineffective assistance claim presents a mixed question of law and fact, requiring de novo review. *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010). To prevail on an

---

[11] On remand for resentencing, however, reversal of one or more counts in the original judgment and sentence does not affect the finality of the portions of that original judgment and sentence that were correct and valid at the time it was pronounced. *State v. Kilgore*, 167 Wn.2d 28, 37, 216 P.3d 393 (2009) (citing to *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 34, 604 P.2d 1293 (1980)).

ineffective assistance claim, a defendant must show both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of a defense counsel's performance is highly deferential; we apply a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Grier*, 171 Wn.2d at 33.

To establish the prejudice prong of the ineffective assistance of counsel test, a defendant must show a reasonable probability that the outcome of the trial would have differed absent counsel's deficient performance. *Grier*, 171 Wn.2d at 34. Thus, "[w]here a claim of ineffective assistance of counsel rests on trial counsel's failure to object, a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010). Failure to show either prong of the test defeats a claim of counsel's ineffective assistance. *Strickland*, 466 U.S. at 697; *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Simmons fails to sustain his burden here.

B. Stipulation/Failure To Object to Comparability of Out-of-State Conviction

Simmons premises his deficient performance argument on defense counsel's allegedly erroneous stipulation (and failure to object) that Illinois's aggravated battery offense, to which he pled guilty in 2005, was legally comparable to Washington's second degree assault offense.[12]

---

[12] In stipulating to Simmons' offender score at both the original sentencing and the resentencing on remand, defense counsel relied on *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986) (*overruled on other grounds* by *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1988)), in which Division Three of our court held that aggravated battery under a 1982 Illinois statute was comparable to a class B felony under Washington law for offender score calculation

For the first time on appeal, Simmons argues that these two offenses were not comparable because Illinois's definition of "great bodily harm" was broader than Washington's definition of "substantial bodily harm." Br. of Appellant at 9 (internal quotation marks omitted). We disagree.

RCW 9.94A.525 requires the sentencing court to determine an offender score based on the number of adult and juvenile felony convictions before the sentencing date. RCW 9.94A.525(1). Out-of-state convictions are classified according to the comparable offense definitions and sentences under Washington law. RCW 9.94A.525(3). An out-of-state conviction may be included in the offender score if there is either legal or factual comparability with a Washington felony. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005).

### 1. Legal Comparability

We determine legal comparability by examining the elements of the out-of-state offense and the corresponding Washington statutes in effect when the foreign crime was committed. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). Offenses are comparable if the elements are identical or if the out-of-state offense statute is not broader than the Washington statute. *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999).

The State argues that *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986) (*overruled on other grounds* by *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1988)), controls whether aggravated battery in Illinois is substantially similar to second degree assault in

---

purposes. Although both the Illinois and the Washington statutes have since been amended, we agree with the State that these two offenses are legally comparable and factually comparable.

Washington. Simmons responds that *Franklin* does not control here because the criminal statutes compared in that case have since been repealed and amended. We agree with Simmons that *Franklin's* 27-year-old definition of both states' statutes no longer control and, therefore, *Franklin* does not apply here.

Instead, we address whether Illinois's battery statute is comparable to Washington's assault statute, which turns on their respective "bodily harm" elements. Washington State defines degrees of bodily harm by statute, whereas Illinois relies on case law to define its variations of bodily harm; this distinction, however, does not foreclose a determination of legal comparability.

a. Illinois's aggravated battery: "great bodily harm"

In 2005, Simmons pled guilty to aggravated battery under former 720 Ill. Comp. Stat. 5/12-4(a) (2005), which then provided, "A person who, in committing a battery, intentionally or knowingly causes *great bodily harm*, or permanent disability or disfigurement commits aggravated battery."[13] (Emphasis added). With respect to the "bodily harm" component of this element:

> Although it may be difficult to pinpoint exactly what constitutes *bodily harm* for
> the purposes of the [Illinois battery] statute, *some sort of physical pain or damage*

---

[13] In 2011, the Illinois legislature amended 720 Ill. Comp. Stat. 5/12-3, defining "battery," to remove the specific intent element. The pertinent portion of this statute now provides:
> (a) A person commits battery if he or she knowingly without legal justification by
> any means (1) causes bodily harm to an individual or (2) makes physical contact
> of an insulting or provoking nature with an individual.
In 2011, the Illinois legislature also amended 720 Ill. Comp. Stat. 5/12-4, now renumbered as 720 Ill. Comp. Stat. 5/12-3.05. The pertinent portion of this statute now provides:
> (a) . . . A person commits aggravated battery when, in committing a battery, other
> than by the discharge of a firearm, he or she knowingly does any of the following:
> (1) Causes great bodily harm or permanent disability or disfigurement.
Neither amendment affected the substance of the statutes at issue here.

*to the body*, like lacerations, bruises or abrasions, whether *temporary or permanent*, is required.

*People v. Mays*, 91 Ill. 2d 251, 256, 437 N.E.2d 633, 62 Ill. Dec. 945 (1982) (emphasis added). "[T]he determination centers upon the injuries which the victim did, in fact, receive." *People v. Figures*, 216 Ill. App. 3d 398, 401, 576 N.E.2d 1089, 160 Ill. Dec. 135 (1991) (citing *People v. Costello*, 95 Ill. App. 3d 680, 684, 420 N.E.2d 592, 51 Ill. Dec. 178 (1981)). But the injury need not be permanent; nor does it require broken bones or injury to the head or skull. *People v. Smith*, 6 Ill. App. 3d 259, 264, 285 N.E.2d 460 (1972); *People v. Edwards*, 304 Ill. App. 3d 250, 255, 710 N.E.2d 507, 237 Ill. Dec. 877 (1999).

Illinois's aggravated battery statute's use of "[g]reat" to modify "bodily harm" means "'remarkable in magnitude, power, intensity, degree or effectiveness.'" *In re J.A.*, 336 Ill. App. 3d 814, 820, 784 N.E.2d 373, 271 Ill. Dec. 155 (2003) (Gallagher, J., concurring) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 994 (1993)). Thus, with respect to the "great" bodily harm component of this element, Illinois's aggravated battery required physical pain or damage to the body of a nature *more severe than ordinary battery*. *Mays*, 91 Ill. 2d at 256; *Figures*, 216 Ill. App. 3d at 401. "Because *great* bodily harm requires an injury of a graver and more serious character than an ordinary battery, simple logic dictates that the injury must be *more severe* than that set out in the *Mays* definition." *Figures*, 216 Ill. App. 3d at 401 (emphasis added).

b. Washington's second degree assault: "substantial bodily harm"

In Washington, a person commits second degree assault when he "[i]ntentionally assaults another and thereby recklessly inflicts *substantial bodily harm*." RCW 9A.36.021(1)(a) (emphasis added).[14] RCW 9A.04.110(4)(b) defines "*substantial* bodily harm" as

> bodily injury which involves a *temporary but substantial disfigurement*, or which causes a temporary but substantial *loss or impairment of the function of any bodily part or organ*, or which causes a fracture of any bodily part.

(Emphasis added).[15] Our Washington Supreme Court recently refined the definition of "'substantial'" as a degree of harm that is "'considerable in amount, value, or worth.'" *State v. McKague*, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)).

c. Comparison

The "*great* bodily harm" element of Illinois's former aggravated battery statute,[16] under which Simmons was convicted and which has since been amended, is legally comparable to the "*substantial* bodily harm" element of Washington's second degree assault because, under each state's definition, one type of harm required is harm that is *not* permanent, but instead, "'considerable'" or "'remarkable,'" notable and of consequence. *McKague*, 172 Wn.2d at 805 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)); *In re J.A.*, 336 Ill.

---

[14] The legislature amended RCW 9A.36.021 in 2007 and 2011. LAWS OF 2007, ch. 79, § 2; LAWS OF 2011, ch. 166, § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[15] The legislature amended RCW 9A.04.110 in 2007, 2010 and 2011. LAWS OF 2007, ch. 79, § 3; LAWS OF 2011, ch. 166, § 1 and ch. 336, § 350. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[16] Former 720 Ill. Comp. Stat. 5/12-4(a) (emphasis added).

App. 3d at 820 (Gallagher, J., concurring) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 994 (1993)).

Illinois's former aggravated battery statute also included, however, a more severe degree of harm than mere substantial bodily harm, namely *"permanent disability or disfigurement,"* which was comparable to the *"great* bodily harm" required for Washington's *first degree* assault,[17] but more severe than its lesser included "substantial bodily harm" element of Washington's second degree assault statute.[18] Former 720 Ill. Comp. Stat. 5/12-4(a) (emphasis added). Thus, this more severe type of aggravated battery in Illinois would also be comparable to Washington's second degree assault for offender score calculation purposes. Nevertheless, we also address factual comparability.

### 2. Factual Comparability

To determine factual comparability, "the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." *State v. Thiefault,* 160 Wn.2d 409, 415, 158 P.3d 580 (2007) (citing *Lavery,* 154 Wn.2d at 258). When Simmons pled guilty to the 2005 Illinois aggravated battery under former 720 Ill. Comp. Stat. 5/12-4(a), he stipulated that he "did knowingly cause great bodily harm to a Billy Roberts in that he struck Billy Roberts on or about the face and head." Supplemental Clerk's Papers at 74.[19] In effect,

---

[17] RCW 9A.04.110(4)(c) (emphasis added); RCW 9A.36.011.

[18] RCW 9A.36.021.

[19] The accompanying police report showed that Simmons broke the Illinois aggravated battery victim's jaw by punching and kicking the victim in the face and head. Again, this "fracture" of the victim's jaw, a "bodily part," meets Washington's definition of "substantial bodily harm" for purposes of Washington's second degree assault statute. RCW 9A.36.021(1)(a); RCW

Simmons' stipulation to the Illinois aggravated battery conviction based on infliction of "great bodily harm" confirms the Illinois statutes' legal comparability to Washington's second degree assault statute, based on the "bodily harm analysis" undertaken by this court.

We hold, therefore, that Simmons' Illinois aggravated battery conviction is comparable to Washington's second degree assault and, thus, defense counsel's stipulation to comparability was reasonable and not deficient performance;[20] therefore, his ineffective assistance of counsel claim also fails.

### C. Failure To Object to Presentence Investigation

Simmons next argues that defense counsel's performance was deficient in failing to object to the use of his 2009 presentence report during resentencing in 2011. Again, Simmons does not show deficiency in defense counsel's performance in failing to object at resentencing to the resentencing court's consideration of the 2009 presentence report before imposing a standard range sentence. And, even if Simmons could show deficiency in defense counsel's performance, Simmons fails to show any prejudice or that, had counsel objected, the trial court "*may* have been inclined to set his minimum sentence below the top of the standard range" instead of the high end. Br. of Appellant at 14 (emphasis added). *See Fortun-Cebada*, 158 Wn. App. at 172.

---

9A.04.110(4)(b). Thus, Simmons' 2005 Illinois aggravated battery conviction was factually comparable to Washington's second degree assault.

[20] In light of Simmons' having failed to show deficient performance, we need not address the second prong of the ineffective assistance test. *Strickland*, 466 U.S. at 697. Nevertheless, we note that Simmons also fails to show that his offender score was wrongly calculated or that it would have been lower absent counsel's stipulation. Thus, he fails to sustain his burden on the prejudice prong as well.

The superior court judge who resentenced Simmons on remand following his first appeal was the same judge who had presided over Simmons' original trial in 2009. Before the resentencing hearing, the trial court reviewed the presentence investigation. However, the trial court expressly set the mandatory minimum sentence at the high end "based on the facts as [the] Court heard them and as found by the jury," stating:

> Clearly, even based on what Mr. Simmons said today, he does not understand or appreciate how serious his actions were and the very damaging effect they have not just on the victim in this case but potentially on the community at large when he's released. He said he "didn't let this little altercation get the best of me." This was not a little altercation. It was a brutal rape and the testimony at trial and the findings of the jury support that.

Verbatim Report of Proceedings at 13. Again, Simmons fails to establish either prong of the ineffective assistance of counsel test, and his claim fails.

## II. MANDATORY LFOs, WITH NO FINDING OF ABILITY TO PAY

Simmons next argues that the record does not support the trial court's finding of his present or future ability to pay the $600 minimum mandatory LFOs re-imposed at resentencing[21] and, therefore, we should vacate these LFOs. Simmons failed to preserve this issue for review; thus, we do not address its merits.

First, Simmons does not demonstrate a manifest constitutional error warranting an exception to the preservation rule under RAP 2.5(a). Simmons did not avail himself of multiple opportunities to challenge imposition of LFOs, based on the trial court's lack of findings about his ability to pay: (1) during his original sentencing in 2009, when the trial court imposed them; (2) in his first appeal, from that original sentencing, in which he challenged other aspects of his

---

[21] RCW 10.01.160(3) provides that the trial court may not order legal financial obligations unless the defendant "is or will be able to pay them."

sentence; and (3) when he was before the trial court again during resentencing on remand in 2011. Yet, he did not object to the trial court's imposition of the minimum mandatory LFOs; nor did he bring to the trial court's attention that it had failed to enter findings about his ability to pay. We hold that Simmons failed to preserve this issue for review; therefore we do not further consider it.

Second, RAP 2.5(c)(1) does not render viable every issue that a defendant could have raised, but did not raise, in an earlier appeal; "[o]nly if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question." *Barberio*, 121 Wn.2d at 50; *see also State v. Kilgore*, 167 Wn.2d 28, 41, 216 P.3d 393 (2009). This prohibition is especially pertinent here because the record shows that during resentencing on remand, the trial court essentially passed through the LFOs that it had originally imposed in 2009, which at that time Simmons had neither challenged nor claimed he could not pay; nor did he raise this issue during his first appeal, from his original 2009 judgment and sentence. In our view, the record does not show that the trial court actually reconsidered these LFOs in substance or made any new discretionary ruling about them during resentencing on remand; instead, it merely acknowledged the previous LFOs it had imposed and passed them through on the new judgment and sentence form that it signed on resentencing.

We dismiss Simmons' appeal.

No. 42570-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.